James JARDINE, Plaintiff,

v.

MARYLAND CASUALTY COMPANY, Defendant.

James Jardine, Plaintiff,

v.

OneBeacon Insurance Company, Defendant.

Case Nos. 10–3318 SC, 10–3319 SC, 10–3335 SC, 10–3336 SC.

United States District Court, N.D. California.

Oct. 4, 2011.

Ronald George Peck, Schenone and Peck, Hayward, CA, for Plaintiff.

Vivian Leung Lerche, Selman Breitman, San Francisco, CA, Jonathan Gross, Bishop Barry Drath, Emeryville, CA, for Defendants.

### ORDER GRANTING MARYLAND'S MOTIONS FOR SUMMARY JUDGMENT

SAMUEL CONTI, District Judge.

## I. INTRODUCTION

Before the Court are four related actions in which Plaintiff James Jardine ("Jardine") brings claims against insurance companies Maryland Casualty Company ("Maryland") and OneBeacon Insurance Company ("OneBeacon"). Case Number 10–3318 ("10–3318") involves Maryland's refusal to pay the policy amount after a wall in Plaintiff's property was allegedly damaged. Case Number 10–3319 ("10–3319") involves Maryland's refusal to pay after a fire damaged the same property.

Case Numbers 10–3335 and 10–3336 concern OneBeacon's refusal to pay out on a policy after the same wall and fire damage allegedly occurred. Now Maryland moves for summary judgment in both 10–3318 and 10–3319; these Motions are fully briefed. ECF Nos. 35, ("10–3319 Mot."), 36 ("10–3318 Mot."), 39 ("10–3319 Opp'n"),[1] 41 ("10–3318 Opp'n"), 43 ("10–3319 Reply"), 44 ("10–3318 Reply").[2] Because these motions involve the same parties, the same legal standard, and many of the same facts, the Court addresses them jointly in this Order. For the following reasons, the Court GRANTS Maryland's Motions for Summary Judgment in 10–3318 and 10–3319.

## II. BACKGROUND

Unless otherwise noted, the following facts are not in dispute between Jardine and Maryland.[3] Jardine owned a multi-unit commercial building located at 24800–24808 Mission Boulevard in Hayward, California ("the Property"). Maryland RJN Ex. A ("Tent. Decision") at 2.[4] The Property was insured by Maryland under Precision Portfolio Policy Number PAS 41569410. 10–3319 Gross Decl. Ex. K (the "Policy").[5] Jardine is an insurance agent and sold the Policy to himself. *Id.* Ex. A at 20, 25. In May 2005, Plaintiff leased a portion of the Property to Martha Chavez ("Chavez") and Luz Serna ("Serna"), who used it to operate a business, Bridal & Beyond. Ten. Decision at 2. The lease ran from May 15, 2005 to May 14, 2007. *Id.*

To improve the Property's appearance, Chavez and Serna applied a plaster treatment to its walls, which were composed of painted cinder blocks. *Id.* The parties agree that the plaster treatment interacted negatively with the cinder, causing damage to the wall. 10–3318 Mot. at 10; 10–3318 Opp'n at 5–6.

On October 28, 2006, Chavez and Serna sold their business and assigned their lease to Raquel Pardo ("Pardo"). Ten. Decision at 3. Around this time, Jardine and Pardo became aware of the wall damage. *Id.* Jardine testified that he never removed the plaster or repaired the wall. 10–3318 Gross Decl. Ex A at 218–219. In spite of the wall damage, Pardo entered into a new lease with Jardine on April 25, 2007. *Id.* Ex. B.

---

1. Maryland urges the Court to ignore the arguments in Jardine's 10–3319 Opposition because the brief was filed a day late under the deadlines set forth in the Civil Local Rules. 10–3319 Reply at 1. Jardine filed a Request for Extension of Time to File Opposition, but this request did not conform to Civil Local Rules 6–2 and 6–3. While the Court does not condone such violations of the Local Rules, ignoring Jardine's Opposition would not further the interests of justice.

2. Maryland inadvertently filed its 10–3319 Motion and supporting papers in 10–3318. ECF No. 48. Jardine also filed his 10–3319 Opposition in 10–3318. The Court construes these filings as pertaining to 10–3319. Unless otherwise noted, all ECF numbers refer to filings in the docket for 10–3318.

3. The Court GRANTS the unopposed requests for judicial notice submitted by Maryland and Jardine. ECF. Nos. 37 ("Maryland RJN"); 42–2 ("Jardine RJN").

4. Jardine filed a California State court action against Chavez and Serna for the wall damage, *Jardine v. Chavez, et al.*, Alameda County Superior Court Case No. HG08–36624. A copy of the court's Tentative Decision ("Ten. Decision") in that action was attached as Exhibit A to Maryland's RJN.

5. Jonathan Gross ("Gross"), counsel for Maryland, filed declarations in support of Maryland's 10–3318 and 10–3319 motions and replies. ECF No. 35–1 ("10–3319 Gross Decl."); 36–15 ("10–3318 Gross Decl."), 38 ("10–3318 Gross Supp. Decl."); 43–1 ("10–3319 Gross Reply Decl."); 44–1 ("10–3318 Gross Reply Decl.").

The Property sustained additional damage on June 13, 2007 when a halogen light fixture in Pardo's unit set fire to some of her dresses. 10–3319 Gross Decl. Ex. B at 104–105; 10–3319 Opp'n at 4–5. Maryland contends that the damage from the fire was minor, causing only a silver-dollar-sized burn mark on the carpet. 10–3319 Mot. at 6. Jardine disagrees, contending that the fire resulted in substantial fire and smoke damage. 10–3319 Opp'n at 5. Jardine testified that, due to the fire, he replaced some of the ceiling tile, vacuumed and wiped down the Property, and ran a fan to alleviate the "smoke smell," but did not keep track of his expenses. 10–3319 Gross Decl. Ex. A at 109–110.

Jardine has testified that Pardo stopped paying rent in September or October of 2007 and moved out around that time. 10–3119 Gross Decl. Ex. A at 116. It is unclear whether the fire or plaster damage was a factor in Pardo's decision. *Id.* at 116–117.

On April 2, 2008, Jardine entered into a Policyholders Settlement and Release Agreement with OneBeacon, Pardo's insurer, concerning the fire damage. 10–3335 ECF No. 30, Cook Decl. Ex. F ("Settlement Agreement"). Under the Settlement Agreement, Jardine was "paid for fire damage repairs that may exceed the reasonable and necessary cost of repair." *Id.* at 1.

Two weeks later, Jardine notified Maryland of his claims for the plaster and fire damage. 10–3318 Gross Decl. Ex. D; 10–3319 Gross Decl. Ex. E ("Jardine RFA Response") at 2.[6] With respect to the plaster damage, a structural engineer hired by Maryland concluded that the damage was caused by a sulfate attack on the wall, resulting from a combination of moist conditions, the application of the wrong type of plaster, and inadequate wall preparation. 10–3318 Gross Decl. Ex. E. at 4. An engineer hired by Jardine, William Jones ("Jones"), agreed. *Id.* Ex. G. Maryland ultimately paid Jardine $46,225 for the plaster damage—$25,000 as the actual cash value of the structure, $2,500 to repair residual damage from the extraction of core samples from the walls, $4,175 for Jones' engineering services, and a $14,550 advance for business income loss coverage. *Id.* Exs. N, O, P at 110–11.

With respect to the fire damage, on August 28, 2008, an independent adjustor prepared a repair estimate at Maryland's request. 10–3319 Gross Decl. Ex. H. The estimate concluded that fire damage repairs on the Property would cost $10,727.97. *Id.* On November 8, 2008, Maryland paid Jardine $10,227.97 (the amount of the repair estimate less Jardine's $500 deductible). *Id.* Ex. I. Maryland and Jardine also agreed to hire VP Construction to prepare another repair estimate. 10–3319 Opp'n at 5. In a letter dated December 3, 2008, VP Construction estimated that the repairs for the fire damage would cost $34,423.20 and would take 60 days to complete, as long as building code upgrades were not required. 10–3319 Gross Decl. Ex. F. Jardine declares that code upgrades would have cost an additional

---

**6.** Pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure, Maryland contends that its Requests for Admissions ("RFA") in 10–3319 and 10–3318 should be deemed admitted as undisputed facts because Jardine failed to provide timely responses. 10–3318 Mot. at 12; 10–3319 Mot. at 8. Jardine's attorney claims that the RFAs in 10–3318 were not properly served and that the parties reached an undocumented agreement to extend the response deadline for the RFAs in 10–3319. ECF Nos. 42–1 ¶ 3, 40 ¶ 4. The Court is reluctant to deem Maryland's RFAs admitted as there is a dispute concerning service and the existence of an agreement extending the response deadline. Further, the default admissions would contradict the positions Jardine has taken throughout this litigation. Accordingly, the Court declines to deem admitted Maryland's RFAs.

$59,446, but has presented no evidence supporting this estimate. 10–3319 Jardine Decl. ¶ 7.[7] Maryland contends that such upgrades were unnecessary. 10–3319 Reply at 7. In any event, it is undisputed that Jardine never performed the code upgrades or any other major repairs. 10–3319 Mot. at 13; 10–3319 Opp'n at 9.

On September 10, 2009, the City of Hayward purchased the Property from Jardine for approximately $1.3 million. 10–3318 Gross Decl. Ex. S. The Property is to be used for the construction of the Route 238 Corridor Improvement Project. *Id.*

On February 10, 2010, Jardine filed his 10–3318 action against Maryland for payments allegedly due for the plaster damage in the Superior Court of California for Alameda County ("Superior Court"). ECF No. 1–1. On March 9, 2010 he filed an amended complaint in the 10–3318 action as well as a complaint in his 10–3319 action for payments allegedly due for the fire damage, both in Superior Court. ECF No. 1–2 ("10–3318 Compl."); 10–3319 ECF No. 1 Ex. A ("10–3319 Compl."). Maryland removed both actions to federal court on July 29, 2010 on diversity grounds. ECF No. 1; 10–3319 ECF No. 1.

Both complaints allege three causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; and (3) violations of the Fair Claims Settlement Act as set forth in California Insurance Code § 790.03 *et seq.* and California Code of Regulations § 2695.1 et *seq.* 10–3318 Complaint; 10–3319 Complaint.

In its 10–3318 Motion, Maryland argues that summary judgment is appropriate because (1) no private right of action exists for the statutory violation alleged in Jardine's third cause of action (2) Jardine's plaster claim is barred under the Policy's exclusions, (3) Jardine is not entitled to any further payments under the Policy, and (4) Jardine is not entitled to any additional coverages under the policy. 10–3318 Motion at 8–9. With respect to its 10–3319 Motion, Maryland argues that summary judgment is appropriate because (1) no private right of action exists for the alleged statutory violations, (2) Jardine has been fully compensated for his fire loss, (3) Jardine is not entitled to coverage for code upgrades, and (4) Jardine is not entitled to Business Income coverage. 10–3319 Motion at 5–6.

## III. *LEGAL STANDARD*

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, "Rule 56[ ] mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. "When opposing parties tell two

---

**7.** Jardine submitted declarations in opposition to Maryland's Motions. ECF Nos. 40 ("10–3319 Jardine Decl."), 50 ("10–3318 Jardine Decl.").

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

## IV. DISCUSSION

### A. Maryland's 10–3318 Motion

#### 1. Fair Claims Settlement Practices Act

Maryland moves for summary judgment on the third cause of action in 10–3318 on the grounds that no private right of action exists under California Insurance Code Section 790.03 *et seq.* and California Code of Regulations Section 2695.1 *et seq.* 10–3318 Mot. at 25. Jardine does not object to the dismissal of his third cause of action. 10–3319 Opp'n at 22–23. Accordingly, the Court GRANTS Maryland's 10–3318 Motion as to Jardine's third cause of action for violation of the Fair Claims Settlement Practices Act.

#### 2. Policy Exclusions

Maryland argues that Jardine's remaining claims for plaster damage are barred by two policy exclusions: (1) the exclusion for faulty, inadequate, or defective renovation or remodeling under section II.A.3 of the Policy ("renovation/ remodeling exclusion"); and (2) the exclusion for loss or damage resulting from rust, corrosion, or deterioration under section II.A.2 ("deterioration exclusion"). 10–3318 Mot. at 15–17. Specifically, the Policy provides:

II. COVERED CAUSES OF LOSS

RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE unless loss or damage is excluded or limited as described below:

A. EXCLUSIONS

...

2. We will not pay for loss or damage caused by or resulting from any of the following:

...

c.(2) Rust, corrosion, fungus, decay, *deterioration,* hidden or latent defect or any quality in property that causes it to damage or destroy itself.

But if an excluded cause of loss that is listed in 2.c.(1) through (6) results in .... a "specified cause of loss," we will pay for ... the loss or damage caused by that specified cause of loss.

...

3. We will not pay for loss or damage caused by or resulting from any of the following. But if an excluded Cause of Loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

...

c. Faulty, inadequate or defective:

...

(2) Design, specifications, workmanship, repair, construction, *renovation, remodeling,* grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling;

....

Or part or all of any property on or away from the "described premises".

Policy at 7–8, 10 (emphasis added).

Maryland argues that the renovation/remodeling exclusion applies here because Chavez and Serna applied plaster to the walls to renovate and remodel the Property. 10–3318 Mot. at 16. Maryland contends the plaster application amounted to faulty, inadequate, or defective renova-

tion or remodeling because the walls began to peel and blister after it was applied. *Id.* Maryland further argues that the deterioration exclusion applies because the plaster application resulted in a "sulfate attack" which caused Jardine's walls to deteriorate. *Id.* at 16–17.

Jardine responds that neither exclusion applies. Jardine points out that, while the Policy does exclude loss or damage resulting from defective renovation or remodeling, it also states: "if an excluded Cause of Loss ... results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." 10–3318 Opp'n at 11. Jardine argues that because the plaster application resulted in a covered cause of loss, he is entitled to compensation. 10–3318 Opp'n at 11. Jardine also argues that the deterioration exclusion does not apply because the damage to his wall was the result of a "specific event" that caused the wall to degrade within a short period of time, not the result of a "gradual decline." *Id.* at 12. Finally, Jardine contends that the earlier determination by Maryland's claims adjustors that this was a covered claim should be binding on Maryland. *Id.*

Jardine is correct that the remodeling/renovation exclusion bars only the replacement of the plaster, not the loss resulting from its application.[8] Therefore, the key question is whether the deterioration exclusion bars Jardine from recovering for the resulting loss. California courts have found that deterioration includes "slow-moving disintegration or corrosion of the [insured material] because of external forces." *Brodkin v. State Farm Fire & Cas. Co.*, 217 Cal.App.3d 210, 217, 265 Cal.Rptr. 710 (Cal.Ct.App.1989). The Ninth Circuit applied this principle in *Berry v. Commercial Union Ins. Co.*, 87 F.3d 387 (9th Cir.1996). In *Berry*, the question before the court was whether damage to an insured's irrigation pipes caused by a liquid fungicide was barred by an insurance policy's "deterioration" exclusion. *Id.* at 388. The insured had flushed the fungicide through her pipes to combat potato and carrot blight and discovered the damage two years later. *Id.* The Ninth Circuit held that "a degradation that takes two years to manifest" was "slow-moving" and therefore constituted "deterioration."[9] *Id.* at 389 n. 3.

The Court finds that the deterioration exclusion bars Jardine's claim. Jardine concedes that the damage to his wall "occurred over an approximate year and a half time," 10–3318 Opp'n at 12, just short of the two-year timeframe at issue in *Berry*. Such "slow-moving disintegration or corrosion" constitutes deterioration. The Court rejects Jardine's contention that the deterioration exclusion does not apply because the plaster damage was caused by the specific act of his tenants. Jardine cites no authority supporting his position, and the Ninth Circuit reached a contrary conclusion in *Berry*. In that case, a specific act—the use of liquid fungicide—caused the deterioration.[10]

---

8. Maryland concedes as much in its Reply. *See* 10–3318 Reply at 3.

9. The Ninth Circuit ultimately found in favor of the insured because the fungicide manufacturer's failure to warn about the corrosive effects of its product was the "proximate efficient cause" of the damage. *Berry*, 87 F.3d at 393. The court found that this constituted a peril covered by the insured's policy. *Id.* Jardine has not argued that Chavez and Serna's negligence was the proximate efficient

cause of his loss. Even if that issue was before the Court, the Policy's renovation/remodeling exclusion would bar Jardine from recovering for faulty, inadequate or defective renovation or remodeling.

10. The Court also rejects Jardine's contention that the "policy states that even if this were simple deterioration, the claim is covered under the policy if it is a Covered Cause of Loss." 10–3318 Opp'n at 12. The Policy actually states: "if an excluded cause of loss [in-

The Court also rejects Jardine's contention that earlier determinations by Maryland's adjustors that Jardine's claim was covered should be binding on Maryland. Jardine points to language from a November 6, 2008 letter from Maryland adjustor Mitch Hammond ("Hammond") stating that "the investigation into the cause and the review of the policy does not show that the loss is excluded." 10–3318 Opp'n at 12, 13; 10–3318 Peck Decl. Ex E ("Olson Dep.") at 69–70.[11] Jardine offers no authority suggesting that the preliminary findings of an insurance adjustor are binding on the insurance company. Further, nothing in Hammond's statement indicates that he intended to bind Maryland or offer a final determination on Jardine's claim. In fact, Maryland repeatedly reserved its rights under the Policy throughout its handling of the claim. 10–3318 Gross Decl. Ex. E at 12; 10–3318 Gross Supp. Decl. Ex. AA at 3. The Hammond letter is also insufficient to raise a genuine dispute of material fact because there is no indication of what facts Hammond based his findings on and whether those facts contradict the current record.[12]

The Court finds that Jardine's 10–3318 claim is barred by the Policy's deterioration exclusion. Accordingly, the Court GRANTS Maryland's Motion as to Jardine's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.[13]

### B. Maryland's 10–3319 Motion
#### 1. Fair Claims Settlement Practices Act

As in 10–3318, Jardine does not object to the dismissal of his third cause of action in 10–3319 for violations of the Unfair Insurance Practices Act. Accordingly, the Court GRANTS Maryland's 10–3319 Motion as to Jardine's third cause of action.

#### 2. Fire Loss Coverage

Maryland contends that Jardine has been fully compensated for the property damage resulting from the fire. 10–3319 Mot. at 10–12. Specifically, Maryland argues that Jardine has already received $41,099.22 in insurance proceeds— $30,781.25 from OneBeacon[14] and $10,227.97 from Maryland—to repair $34,423.20 in fire damage. 10–3319 Reply

cluding deterioration] results in ... a 'specified cause of loss,' we will pay for ... the loss or damage caused by the 'specified cause of loss.'" Policy at 8–9. The Policy defines "specified cause of loss" to mean fire, lightning, explosion, and a variety of other things. Id. at 26. The wall damage claimed by Jardine does not fall within any of the categories set forth by the Policy. See id.

11. Ronald G. Peck ("Peck"), Jardine's attorney, submitted declarations in support of Jardine's Opposition to Maryland's Motions in 10–3318 and 10–3319. ECF Nos. 51 ("10–3318 Peck Decl."); 10–3319 ECF No. 28 ("10–3319 Peck Decl."). Attached as Exhibit E to the 10–3318 Peck Declaration is a portion of the deposition transcript of John Olson ("Olson"), Maryland's executive general adjuster on Jardine's claim.

12. Jardine has not submitted a copy of the Hammond letter to the Court. Instead, he relies on portions of the Olson deposition in which Olson testifies about the contents of the Hammond letter. Olson's testimony does not describe how Maryland reached its preliminary determination on Jardine's claim.

13. Because the Court finds that Jardine's 10–3318 claim is barred by the Policy's exclusions, it need not address Maryland's arguments that Jardine is not entitled to any further payments or any additional coverages under the Policy.

14. In its Motion, Maryland contended that OneBeacon paid Jardine $39,781.25 for fire damage repairs. 10–3319 Mot. at 11. In its Reply, Maryland concedes that only $30,781.25 of OneBeacon's payment was for fire damage, and the remainder was for loss of rent. 10–3319 Reply at 3. Maryland claims that it changed its figure after discovering new evidence. Id.

at 4. Maryland states that the $30,781.25 payment was part of the Settlement Agreement between Jardine and OneBeacon concerning the fire damage and that Maryland's $10,227.97 payment was specifically intended to settle Jardine's fire claim. *Id.* at 1–3.

Jardine concedes that the estimated cost to repair the fire damage was $34,423.20, plus the cost of code upgrades.[15] 10–3319 Opp'n at 7. However, he contends that there is a dispute about the purpose of the payments from OneBeacon and Maryland. 10–3319 Opp'n at 7. Jardine declares that the OneBeacon payment was not for fire repairs but "was paid as part of [an] effort to obtain a release from me for many other things."[16] 10–3319 Jardine Decl. ¶ 5. Jardine further declares that he "never was fully clear what [Maryland's $10,227.97] payment was for," but he understood it to be an advance towards his claim for the plaster damage and lost rent. *Id.* ¶ 10.

Jardine's threadbare and self-serving declaration is blatantly contradicted by the record. The OneBeacon Settlement Agreement, which Jardine signed, states that Jardine was "being paid for damage repairs that may exceed the reasonable and necessary cost of repair of the fire and damage and also constitutes a replacement cost payment before said fire damage repair work is completed." Settlement Agreement ¶ 2. Further, correspondence between Jardine and one of OneBeacon's adjustors concerning the settlement, which included an itemized list of the components of the Settlement Agreement, shows that Jardine could have no reason to believe that the $30,781.25 was for anything but fire damage repairs. *See* 10–3319 Gross Decl. Ex F. Accordingly, no reasonable juror could find that the purpose of the OneBeacon payment was for anything other than compensation for the fire damage.

Nor is there a genuine dispute of material fact as to the purpose of Maryland's $10,227.97 payment. Jardine's declaration that the payment was an advance towards his plaster claim and lost rent is directly contradicted by the record. Maryland's August 28, 2008 repair estimate found fire damage of $10,727.97 on the Property. 10–3319 Gross Decl. Ex. H. The estimate called for "replacing the suspended ceiling tile in the main area, cleaning the grid, painting the wall, replacing the carpet and a few fluorescent light fixtures." *Id.* Other documentation provided by Maryland shows that the company later paid Jardine $10,227.97, the cost of repairs less Jardine's $500 deductible, for his June 13, 2007 fire loss.[17] 10–3319 Gross Decl. Ex. I. Jardine has offered no evidence to rebut these documents other than his own declaration, which is devoid of any specific factual allegations. Jardine's declaration is insufficient to create a genuine dispute of material fact concerning the purpose of Maryland's $10,227.97 payment.

Accordingly, the Court finds that Jardine was more than fully compensated for

**15.** The issue of whether Jardine was entitled to payment for the cost of code upgrades under his Building Ordinance or Law Coverage is addressed below.

**16.** Jardine also contends that the Court has already found that there was a substantial conflict in evidence concerning the purpose of this payment. 10–3319 Opp'n at 7. The Court rejects this argument. The Court previously held that there was a genuine dispute of material fact concerning whether the Settlement Agreement barred Jardine's 10–3335 action against OneBeacon; however, the Court did not make any findings about the purpose of the payments made pursuant to the Settlement Agreement. *See* 10–3335 ECF No. 42.

**17.** Additionally, a July 28, 2009 letter to Jardine from an adjustor writing on behalf of Maryland, states that "Maryland Casualty has previously paid you $10,727.97 [less your deductible] to repair damage from the fire." 10–3319 Gross Reply Decl. Ex. E at 9.

the $34,423.20 repair costs resulting from his fire loss.

### 3. Building Ordinance or Law Coverage

In addition to repair costs, Jardine claims that he is entitled to at least $59,446 for code upgrades under the Building Ordinance or Law provisions of the Policy. 10–3319 Opp'n at 7. The Building Ordinance or Law coverage pays for increased costs to repair, reconstruct, and/or remodel damaged and undamaged portions of a property "when the increased cost is the consequence of enforcement of building, zoning or land use ordinance law." Policy at 15. Jardine's policy states: "If you do not repair or replace the damaged building, we will pay only to demolish and clear the site of the undamaged portions of the building." *Id.*

Maryland argues that Jardine is not entitled to Building Ordinance or Law coverage for two independent reasons. 10–3319 Mot. at 12–13. First, Jardine never repaired the fire damage and the express terms of the policy bar windfall payments in such situations. *Id.* Second, Maryland contends that there never was an enforcement of an ordinance or law affecting Jardine's repairs. Maryland points to Jardine's interrogatory response that he "was required to do some of the repairs without formal determination by the building department what the legally required upgrades might be." Mot. at 13.

In his Opposition, Jardine responds to both points. First, he argues that he intended to repair the fire damage but failed to do so because he lacked the funds and Maryland refused to advance the cost of repairs. 10–3319 Opp'n at 10; 10–3319 Jardine Decl. ¶ 13. Jardine declares that his contractor could not know what code upgrades were required until it applied for a building permit, but it was later determined that the upgrades would cost approximately $59,446. 10–3319 Jardine

Decl. ¶¶ 6–7. Jardine argues that he should not be punished for Maryland's refusal to pay for repairs. 10–3319 Opp'n at 10. Second, Jardine argues that the City of Hayward never enforced the building codes and required code upgrades because Maryland refused to pay Jardine's contractor and, consequently, the contractor did not apply for the building permit to do the work. *Id.* Again, Jardine maintains that Maryland should not be permitted to take advantage of its refusal to pay for repairs. *Id.*

■ The Court agrees with Maryland. Jardine's policy states that Maryland will pay "only to demolish and clear the site of the undamaged portions of the building" where repairs are not performed. Policy at 15. Jardine does not dispute that he never performed any code upgrades after the fire. Jardine Decl. at 12–13. Further, as the property has been sold to the City of Hayward, Jardine never will perform any code upgrades on the Property. Jardine's argument that he would have performed the repairs had Maryland advanced him the money is unpersuasive. His policy does not require Maryland to advance money for speculative upgrades, and Jardine points to no authority which would require Maryland to provide such an advance. Awarding Jardine funds for repairs that will never be performed would amount to the kind of windfall payment that is expressly foreclosed by his policy.

Moreover, it is unclear whether code upgrades were even necessary. Jardine declares that "code up-grades would cost approximately $59,446," but fails to provide any evidence to support that figure. *See* Jardine Decl. ¶ 7. Jardine also submits deposition testimony of his contractor, Gary Fair ("Fair"), purportedly showing that code upgrades were required due to the fire damage. 10–3319 Peck Decl. Ex. B. However, Fair's testimony is so vague that

it is unclear whether he believed upgrades were required at all. *Id.* Fair testified: "When you get a permit to do substantial upgrades to any building ..., the new codes kick in and comply and require that you bring up the building to code standard." *Id.* Fair does not say whether Jardine needed to do "substantial upgrades." Further, it is unclear from the testimony whether Fair is referring to upgrades resulting from Jardine's fire or plaster damage. *Id.*

For these reasons, the Court finds that Jardine is not entitled to Building Ordinance or Law coverage.

### 4. Business Income Coverage

Jardine also claims that he is entitled to Business Income coverage because his tenant moved out as a result of the fire. 10–3319 Opp'n at 11–12. Jardine's policy provides: "We will pay for the actual loss of 'business income' you sustain due to the necessary suspension of 'operations' during the 'period of restoration,' but not to exceed 12 consecutive months." Policy at 13. The policy defines operations as "your business activities occurring at the described premises." *Id.* The "period of restoration" commences on "the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss." *Id.* The period ends on the earlier of "the date when the property at the 'described premises' should be repaired, rebuilt or replaced with reasonable speed or similar quality" or "[t]he date when business is resumed at the new location." *Id.*

Maryland argues that Jardine is not entitled to Business Income coverage because he did not cease his operations as landlord during the period of restoration. 10–3319 Mot. at 14. Maryland contends that the period of restoration commenced on June 13, 2007, when the fire occurred, and ended sixty days later since the VP Construction estimate stated that repairs could be completed in sixty days. 10–3319

Mot. at 14. Maryland argues that Jardine did not suspend business operations during this time because Jardine continued to rent the premises to Pardo for four months after the fire. 10–3319 Mot. at 14–15; 10–3319 Reply at 10.

Jardine responds that the estimate provided by VP Construction indicated that fire repair work would take sixty days only if no building code upgrades were required. 10–3319 Opp'n at 11. Jardine contends that because code upgrades were required, the period of restoration should be longer than sixty days, though he does not specify how much longer. *Id.* Jardine also argues that he is entitled to recover lost income because Pardo moved out as a result of the fire damage, which would have been repaired earlier if Maryland had not refused to pay the repair costs. *Id.* at 11–12.

█ The Court finds that Jardine has failed to make a showing sufficient to establish that he is entitled to Business Income coverage under the Policy. Jardine has testified that Pardo stopped paying rent in September or October 2007, three to four months after the fire. *See* 10–3119 Gross Decl. Ex. A at 116. Thus, at trial, Jardine would bear the burden of proving that the period of recovery, i.e., the time it would have taken to repair the Property with reasonable speed or similar quality, exceeded three to four months. The VP Construction estimate—the only evidence before the Court bearing on the period of recovery—indicates that Jardine's repairs would have taken approximately sixty days. 10–3319 Gross Decl. Ex. F.

The evidence does not support Jardine's contention that code upgrades would have extended the period of recovery past the date when Pardo ceased paying rent. First, as discussed above, it is unclear whether code upgrades were necessary. Second, even if code upgrades were neces-

sary, Jardine has failed to offer any evidence that they would have taken more than three to four months to complete. Jardine points to language in the VP Construction estimate stating that "Building Code compliance and Upgrades may result in project exceeding 60 days." *Id.* At trial, Jardine would bear the burden of proving that upgrades were required and that completing the upgrades would have required at least three to four months. Given, the paucity of the evidence offered by Jardine on both of these points, no reasonable jury could conclude that he is entitled to Business Income coverage.[18]

The Court also rejects Jardine's contention that he is entitled to Business Income coverage because repairs were delayed due to Maryland's refusal to pay and, as a result, Pardo moved out before repairs could be started. The Policy expressly provides that the period of recovery starts to run on the date of the loss, not on the date when repairs could have or should have commenced. Policy at 13. Moreover, Jardine did not tender his claim for repairs to Maryland until April 16, 2008, approximately six to seven months after Pardo stopped paying rent and ten months after the fire. Jardine RFA Response at 2.

The Court finds that Jardine has failed to raise a genuine dispute of material fact concerning whether he is entitled to any further compensation under the Policy. Accordingly, the Court GRANTS Maryland's 10–3319 Motion.

## V. *CONCLUSION*

For the forgoing reasons, the Court GRANTS Defendant Maryland Casualty Company's Motions for Summary Judg-

---

18. Moreover, Jardine has failed to offer any evidence concerning how much income he would have lost during the period of recovery. Without such evidence, the court cannot determine whether the amount in controversy

ment against Plaintiff James Jardine in Case Numbers 10–3318 and 10–3319.

IT IS SO ORDERED.

for his sole remaining claim for Business Income coverage would exceed the jurisdictional minimum of $75,000. *See* 28 U.S.C. § 1332(a).